**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JODI MAIR, JACOB SCHMANKE, and FRANCO DEMONTE, individually and on behalf of all persons similarly situated and as class representatives under Illinois Law and/or as members of the collective as permitted under the Fair Labor Standards Act, | ) ) ) ) ) ) ) ) | Case No. 19-cv-8107 |
| Plaintiffs, | ) ) | District Judge Joan H. Lefkow |
| v. | ) ) | |
| EARTHMED, LLC., | ) ) | Magistrate Judge Heather K. McShain |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION OF STATE WAGE AND HOUR CLAIMS**

NOW COME the Plaintiffs, individually and on behalf of all others similarly situated, as Class representatives, by and through their undersigned counsel of record and move this Honorable Court to allow, pursuant to Federal Rule of Civil Procedure 23, initial certification of their class claims under Illinois Minimum Wage Law (IMWL), 820ILCS 105/1, *et seq.,* for Defendant's failure to pay overtime wages under the IMWL.

**I.        SUMMARY OF THE CLASS CLAIMS**

Plaintiffs Jodi Mair, Jacob Schmanke and Franco Demonte, for themselves and for the class of similarly-situated persons, bring claims against Defendant EarthMed, LLC, (hereinafter referred to as "EarthMed" or Defendant), under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.,* for Defendant's failure to pay overtime wages. (See Plaintiff's Complaint (Dkt. No. 1) and Plaintiffs' Amended Complaint (Dkt. No. 41).

1

The Plaintiffs' IMWL Count 1 includes several distinct claims. This Class Motion is not based upon all of the plead claims; rather is limited to those claims that are demonstrated and undisputed at this time based on Defendant's own records and other admissible evidence. Plaintiffs ask the Court to rule upon these undisputed class issues and reserves the right to motion the court for additional Class claims prior to the Court's certification motion deadline. (Dkt. No. 56).

For example, Defendants have admitted, and Defendant's pay records have verified, that Defendant did not pay overtime wages for overtime hours from 2016 to December 31, 2019. (The relevant excerpts of Defendant's Answers to Plaintiffs' First Request to Admit Request No. 7 are attached to this Motion as **Exhibit 1**; see also email exchange suggesting "discretionary" nature of decision to pay overtime, EM2053, attached to this Motion as **Exhibit 23**[1]).

The Plaintiffs now request certification of the following class claims: (1) Failure to pay overtime from 2016 to 2019;[2] and (2) failure to pay overtime, based upon the payment of wages on a bi-monthly manner, rather than by the required seven (7) day pay week method. For these two claims Plaintiffs propose the following subclasses:

- Subclass One: 2016 – 2019 Hourly Employees Not Paid Overtime

Defendant has freely admitted that Defendant simply did not pay overtime wages from founding in 2015 until January 1, 2020. (Ex. 1). Thus, there is no dispute that no overtime was paid to Defendant's hourly employees. Not paying overtime was the policy and procedure of EarthMed consistently during this time. Plaintiff moves for a Class Period for this sub-class of three years prior to the filing of the complaint, or December 12, 2016 to December 31, 2019, the date that Defendant changed its "no overtime" policy.

---

[1] Because most of the documents produced by Defendants have been labeled confidential, they are not attached to this Motion but are filed separately with a Motion for Leave to File Under Seal.

[2] Plaintiff has plead a Tolling Claim because Plaintiff believes that the true class period should be from

Numerosity if fulfilled because there are more than 45 persons in this sub-class. (See employee notice list attached as **Exhibit 2**). Likewise, all the hourly employees in the proposed subclass were treated the same; no non-exempt employee was paid overtime of any amount during the subclass period. (See Defendant's payroll/payment records produced for 2017 (**Exhibit 3**), 2018 (**Exhibit 4)**, and 2019 (**Exhibit 5**)). These records also clearly establish damages, differences of which are limited to mathematical calculation of what is owed.

- Subclass Two: 2016 – present Employees Paid Via "Lump Sum" Method

Likewise, the same applies to the Plaintiffs' claims from 2016 to present for employees not paid overtime due to Defendant's not calculating pay using the required 7-day pay periods, but instead making a "lump sum" payment of wages twice a month. This Motion is based on Defendant's own admissions. Defendant has freely admitted to paying its employees on a 14, 15 or 16 day pay cycle, paying wages twice a month, without calculating overtime using a required seven day pay cycle. Defendant pays its employees on the 15th of the month; thus the first pay period is for 15 days. Defendant makes a second payment on the last day of the month, i.e. the 28th, 29th, 30th or 31st; thus the second pay period is 14, 15, or 16 days long. (See Defendant's Answer to Plaintiffs 6th Requests to Admit; attached as **Exhibit 6**).

Paying in this manner causes systemic failures to pay overtime wages, as shown by an illustrative example: if an employee works 45 hours in the first seven-day period (1st -7th) and 35 hours in the second seven day pay period (8th-14th), EarthMed will pay, using the "lump-sum" method, 80 hours of straight time, rather than 5 hours of overtime. Plaintiffs also present a number of actual examples based on Defendant's own records via sworn testimony. (*See, e,g.* **Exhibits 14-22**).

The "lump-sum" policy has been and remains Defendant's policy (Ex. 7) and has been and is currently applied equally to all hourly employees. (See Exs. 4-7; see also Defendant payroll/payment

---

Defendant's first day of operation. That is disputed, thus not a subject of this Motion.

documents for 2020 (**Exhibit 7**) and January 2021 to March 2021 (**Exhibit 8**)). The "lump-sum" subclass also satisfies numerosity because the number of employees includes the 46 FLSA Notice employees in the first subclass and an additional 21 employees hired in 2020 and 2021. (See Defendant's Answer to Plaintiffs' 7th Request to Admit; attached as **Exhibit 9**). Thus the "lump-sum" sub-class would include at least 67 class members.

Plaintiffs can present evidence of actual violations of nearly all of the 67 employees and use nine specific persons presented by affidavit as examples to establish non-speculative damages.[3] Specifically, Plaintiff Jodi Mair testifies to Defendant's failures to pay not only her own overtime wages, (Mair Declaration attached as **Exhibit 10**) but also the failure of Earthmed to pay the entire class from 2016-2019. (Mair Declaration attached as **Exhibit 11, ¶¶** 7-40.). Plaintiff Franco Demonte also testifies as to being paid in the same manner as the class, as he was paid no overtime for his months of work for Defendant. (See Franco Demonte Declaration attached as **Exhibit 12**, ¶¶ 9-73).

Lastly, Plaintiff Jacob Schmanke also testifies as to overtime violations both for himself, (Jacob Schmanke Declaration attached as **Exhibit 13**, ¶¶ 8-52), and for nine (9) example employees from the class used to demonstrate that all class members were not paid overtime due to "no pay overtime" policy and the "lump sum" policy. (Schmanke Declarations, attached as **Exhibits 14-22**).

As more fully described below, Plaintiff has presented plenary evidence to support the need and effectiveness of class treatment as to the enumerated issues.

**II.     SUMMARY OF EVIDENCE SUPPORTING THE MOTION**

Plaintiffs present the following evidence showing that the no-overtime Policy and "lump-sum" policy of EarthMed causes IWML violations sufficient to support class treatment:

Named Plaintiff Jodi Mair presents testimony of her owed wages that she was subject to the

---

[3] Plaintiff has calculated overtime violations for many more than the nine employees whose calculations are reflected in the declarations attached hereto, which can be provided if requested.

"no overtime policy" and is owed overtime. (See Ex. 10; ¶¶ 6-66) as well as an Affidavit of overtime violations for 2016-2019 for the entire class based on Defendant's universal "No overtime" policy. (Ex. 11; ¶¶ 6-40). Plaintiff Mair also presents testimony in support of Defendant's pay and time records. (Ex. 11; Declaration Exhibits A-E).

Plaintiffs also submit Defendant's own payroll records to show the "no overtime" policy for 2017 (Ex. 3), 2018 (Ex. 4), and 2019 (Ex. 5).[4] These are Defendant's own payroll records which demonstrate for at least three years no overtime was paid and that Defendant paid in 15 or 16-day periods, not 7-day periods.

Plaintiffs present Defendant's Admissions, via Requests to Admit as to the "no overtime" policy, (Ex. 1); the wage payments in 15-16 day periods, not 7-day periods, (Ex. 6); and the number of employees, (Ex. 9).

Named Plaintiff Demonte testifies to his own wage violations showing his standing as a class representative (Ex. 12) while named Plaintiff Jacob Schmanke testifies to his own wage violations showing his standing as a class representative (Ex. 13); as well as nine example Affidavits that demonstrate that the two classes are owed overtime wages: (a) as to Defendant employee Trevor Kantor, owed wages from 2019 due to the "no overtime" policy (Ex. 14, ¶¶ 11-24) and also owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 14, ¶¶ 25-35); (b) as to Defendant employee Mariah Pulice, owed wages from 2019 due to the "no overtime" policy (Ex. 15; ¶¶ 10-21) and also owed overtime due to the Earthmed's "Lump-Sum" policy. (Ex. 15, ¶¶ 22-33); (c) as to Defendant employee Kim Wolf, owed wages from 2019 due to the "no overtime" policy. (Ex. 16, ¶¶ 10-24) and also owed overtime due to Earthmed's "Lump-Sum" pay policy. (Ex. 16, ¶¶

---

[4] Documents produced in response to discovery are self-authenticating. See, e.g. Architectural Iron Workers, et al., v. United Contractors Inc., 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999).

25-33); (d) as to Defendant employee Jen Begrin, owed wages from 2019 due to the "no overtime" policy (Ex. 17, ¶¶ 10-24) and also owed overtime due to Earthmed's "Lump-Sum" pay policy. (Ex. 17, ¶¶ 25-53); (e) as to employee Raven Lee-Prange, owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 18, ¶¶ 11-37); (f) as to employee Tatsu Bland, owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 19, ¶¶ 10-34); (g) as to employee Gale Lemonica, owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 20, ¶¶ 10-34); (h) as to employee Jenna Mauk, owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 21, ¶¶ 11-33); (i) as to employee Fernando Ramos, owed overtime due to Earthmed's "Lump-Sum" policy. (Ex. 22, ¶¶ 10-43).

### III. LEGAL STANDARDS

#### A.    Class Certification

The plaintiff bears the burden of showing that class certification is appropriate. General Tele. Co. Of Southwest v. Falcon, 457 U.S. 147, 161 (1982); Retired Chicago Police Ass 'n v. Chicago, 1 F.3d 584, 596 (7th Cir. 1993). Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23(b); Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1) - (4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); Rosario, 963 F.2d at 1017; Arango v. GC Services, LP, et al., No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *3 (N.D. Ill. June 10, 1998). Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on

6

grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;, or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) - (3).

It is the plaintiff's burden to prove the class should be certified and that the class is indeed identifiable as a class. Trotter v. Klincar, 748 F.2d 1177, 1184 (7th Cir. 1984); Simer v. Rios, 661 F.2d 655, 669 (7th Cir.1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); see also Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir.1977) (agreeing that class definitions must be definite enough that the class can be ascertained). However, Rule 23 is to be liberally construed, and the district court should err in favor of maintaining a class action. King v. Kansas City Southern Indus., 519 F.2d 20, 26 (7th Cir. 1975).

### B.  The Class Descriptions

Plaintiffs seek to certify two sub-classes of IMWL overtime claims pursuant to Rule 23(b)(3):

#### IMWL subclass one: "No overtime Paid Class"

All current, former and future employees of EarthMed not paid overtime for three years prior to the filing of the complaint (12/12/2016) to December 31, 2019.

#### IMWL subclass two: "Lump Sum Class

All current, former and future employees of EarthMed paid on a pay cycle of 14, 15, or 16 days not paid overtime for three years prior to the filing of the complaint to present.

These subclass definitions are drafts and/or suggested language based on the pleadings and are subject to modification upon Order of the Court and/or agreement of the Defendant.

### C.  Plaintiffs' IMWL Claims Should be Certified as a Class Action

Illinois courts routinely grant class certification of wage claims under the Illinois Minimum Wage

Law. See generally Berger v. Perry's Steakhouse of Ill. LLC., 2018 U.S. Dist. LEXIS 39751; 2018 WL 1252106 (N.D Ill, March 12, 2018); Dietrich v. C.H. Robinson Worldwide Inc., 2020 U.S. Dist. LEXIS 23204; 2020 WL 635972 (N.D. Ill. Feb. 11, 2020); Gunn v. Stevens Sec. & Training Servs., 2019 U.S. Dist. LEXIS 100868; 2019 WL 2502019 (N.D. Ill. June 17, 2019); Kramer v. Am. Bank & Trust Co. N.A., 2017 U.S. Dist. LEXIS 48360 (NID IL. (March 31, 2017). Plaintiffs and their claims meet each of the statutory requirements for class treatment of their state law claims.

    1.    Certification Under Rule 23(a)

    (a)    *Numerosity - Rule 23(a)(1)*

A class must be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability is not a synonym for impossibility; rather, joinder is impracticable if it would be difficult or inconvenient. Doe v. Guardian Life Ins. Co. of Am., 145 F.R.D. 466,471 (N.D. 111. 1992). In order to establish numerosity, a plaintiff need not allege the exact number of members of the proposed class. Johnson v. Rohr-Ville Motors, Inc., 189 F.R.D. 363,368 (N.D. 111. 1999). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.". Mulvania v. Sheriff of Rock Island Cty., 850 F.3d 849, 859 (7th Cir. 2017).

Defendant EarthMed has employed more than 20 employees in the last three years. Determining the number of non-exempt employees has been an ongoing effort by Plaintiffs. For example, although Defendant denied that Defendant employed 18 employees in its Answer, (Answer ¶ 28), but when Ordered by this court to produce a list for the FLSA Notice in September of 2020, Defendant produced a list of 46 employees covering 2016 to September of 2020. (See FLSA Notice List; Ex. 2).

Further, Defendant admitted in answers to Requests to Admit that 28 non-exempt employees worked for Defendant from 2016-2019. (See Ex. 9; RTA #s 3-5, 8-10, 13-14, 16, 18-19, 20, 22, 24-27, 31, 33-35, 38, 40-41, 43, 45-46, 48) and Defendant admits that 37 new non-exempt employees worked for Defendant in 2020 and 2021. (See Ex. 9; RTA #s 7, 11-12, 15, 17, 21, 23, 28, 29-30, 32, 36-37, 42, 44, 47, 49-69). Further that many non-exempt employees work for Defendant overlapped both class periods. (See Ex. 9; #s 9, 10, 13, 16, 19, 20, 22, 24, 25, 27, 40, 43, 45, 46, 48). These lists do not include hourly employees hired since March of 2021.

Based on the FLSA collective list 46 hourly employees worked for Defendant, and based on Defendants' admissions, from January 1, 2020 to March of 2021 an additional 21 hourly employees worked for Defendant. Thus, the two sub-classes at issue include at least sixty-seven (67) employees. Numerosity is easily satisfied given these numbers.

(b)      *Commonality - Rule 23(a)(2)*

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "The class 'claims must depend upon a common contention,' and '[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 497 (7th Cir. 2012) (quoting Dukes, 564 U.S. at 350). "The commonality requirement has been characterized as a 'low hurdle' easily surmounted." Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181,185 (N.D. 111. 1992). Generally, courts have found the commonality requirement satisfied with one issue common to all class members.  Marison A. ex rel Forbes v. Giuliani, 126 F.3d 372, 376 (2d. Cir. 1997). ("A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that

question will be resolved in its favor.") (emphasis in original); Bell v. PNC Bank, Nat. Ass'n, 800 F.3d 360, 376 (7th Cir. 2015).

"Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." Walker v. Bankers Life & Cas. Co., 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. Oct. 1, 2007) quoting Riordan v. Smith Barney, 113 F.R.D. 60, 63 (N.D. Ill. 1986). A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. Keele v Wexler, 149 F.3d at 592 (7th Cir. 1998); Miner v. Gillette Co., 428 N.E.2d 478,484-85 (111. 1981). Commonality in the first subclass is shown here by the common policy of not paying overtime of any kind in the years of 2016 to 2019. (Exs. 1, 4-6, 8-10; 12-23).

Likewise, all the employees in the second subclass were paid in the same two week "lump sum" pay cycle, calculating overtime using 14-16 day as opposed to 7-day pay periods. (Exs. 6-8, 18-22). Further, Plaintiffs have presented evidence that both policies resulted in failure to pay overtime to the class members. (Exs. 1-22). Both of these IMWL violations have caused common injury among the IWML Class.

Here, questions of fact and law common to the classes predominate over questions affecting individual members. The common nexus in this case is the universal application of the subject "no overtime" and "lump sum" policies and procedures to all hourly employees. This commonality is testified to by Plaintiffs and verified further by Defendant's own pay records. This is not a scatter shot occasional application by different managers making different decisions for different employees. Rather, these are two policies applied to everyone. ((Exs. 1-22). All employees from 2016 to 2019 were paid no overtime. And all employees from 2016 to present were paid on 15 or 16 day pay cycle. (Exs. 1-22).

10

Plaintiffs' proposed class and its two subclasses both meet this commonality requirement because the "no overtime" and "lump payment" policy and present a common question that will generate a common answer. Defendant admits to paying no overtime from 2016 to 2019. Therefore, no overtime was paid, Defendant is liable to nearly all employees who were not paid overtime wages. Likewise, Defendant admits that it pays its employees on a 14-16 day pay cycle, not a seven-day pay cycle. Defendant admits that Defendant has paid in this "lump-sum" method from 2016 to present and Plaintiff presents undisputed evidence that class members were not paid owed overtime wages due to this policy of "lump-sum" payment method.

The universal application of not paying overtime (2016-2019) and paying in a lump-sum manner (2016 – present) compels certification. The more centralized the decision-making process, the more likely it is that a court will rule that plaintiffs have satisfied the commonality and typicality requirements and certify the class. See Rodolico, et al. v. Unisys Corp., 2001 WL 332501 (E.D.N.Y. Mar. 30, 2001). Here the Class claims are all based on single policies, enforced by Defendant against the Class; verified by business, pay and time records as well as supporting testimony to enforce these universal policies. (Exs. 1-22).

Here, the named Plaintiffs' claims "have the same essential characteristics as the claims of the class at large," Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009). Plaintiffs need only establish a single common nucleus of operative law or fact. Rogers v. Baxter Int'l Inc., No. 04 C 6476, 2006 WL 794734, at *3 (N.D. Ill. Mar 22, 2006) (citing Gomez v. Ill. State Bd. of Educ., 117 F.R.D. 394, 399 (N.D. Ill. 1987) which they have done by defining Defendant's "no overtime" and "lump sum" policies. (Exs 1 – 23). Commonality here has been satisfied.

(c)     *Typicality - Rule 23(a)(3)*

Claims of the class representative(s) and class members are typical if they arise from the

same practice or course of conduct and are based on the same legal theory. Keele, 149 F.3d at 595; De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225,232 (7th Cir. 1983). Typicality and commonality are closely akin. Rosario, 963 F.2d at 1018. "Typical does not mean identical, and the typicality requirement is liberally construed." Gaspar, 167 F.R.D. 51, 57 (N.D. 11. 1996).

The claims of named Plaintiffs and class members arise from the same conduct of Defendant: the Plaintiffs and other class members were all denied overtime wages under the IMWL by virtue of the "no overtime" and "lump-sum" payment policies applied to all members of the classes. All class members need not fit all class descriptions, as some factual variation does not defeat typicality. Walker, 2007 U.S. Dist. LEXIS 73502, at * 13-14. Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009) (quoting De La Fuente v. Stokely., 713 F.2d 225, 232 (7th Cir. 1983)).

Typicality is meant to ensure that the claims of the class representative have the "same essential characteristics as the claims of the class at large." Retired Police Ass 'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." Lacy v. Cook Cty., 897 F.3d 847, 866 (7th Cir. 2018). Here the characteristics are the same: Plaintiffs and the class were all not paid overtime and/or had overtime that was not paid due to the "lump-sum" payment policy – policies that have no factual variation within them and which therefore meet the typicality requirements of Rule 23.

        (d)    *Adequacy of Representation - Rule 23(a)(4)*

            (i)    *Class Counsel is Experienced and Qualified*

Plaintiffs and Plaintiffs' counsel will also fairly and adequately protect the interests of the class. Lead counsel John Ireland is an experienced attorney and has litigated in numerous wage actions. In September of 2012 Plaintiffs' counsel was named class counsel by Judge Edmund

12

Chang in <u>Franks v. MKM Oil</u>, 10 CV 0013 and most recently he was named Class Counsel in <u>Foster v. Fox River Foods</u> <u>et al</u>. in 2017. Plaintiffs' Counsel also was Collective Counsel for a number of certified FLSA Collectives including in this case itself. (John Ireland Declaration attached hereto as Exhibit 24). Co-counsel Lisa Clay is similarly qualified. (See Lisa Clay Declaration attached hereto as Exhibit 25). Plaintiffs' attorneys have demonstrated a serious commitment to this case as evidenced by litigating the case since mid-2019 and seeking further counsel assistance.

> (ii) *There is No Conflict of Interest Between Named Plaintiffs and the Class*

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" <u>Martens</u>, 181 F.R.D. at 259 (quoting <u>Krueger v. New York Tel. Co</u>*., 163 F.R.D. 433 (S.D.N.Y. 1995)).

The named class representatives all were/are hourly employees and seek to representative a class of similarly-situated hourly employees. Therefore, the class representatives have no antagonistic interests that go to the subject matter of the lawsuit See <u>Adames v. Mitsubishi Bank,</u> 133 F.R.D. 82,91 (E.D.N.Y. 1989) (rejecting defendant's argument that persons of different employment levels may have antagonistic interests). (See Ex 1, ¶6)(Ex 2, ¶ 6). (Ex 3,  ¶¶ 6-7).

> 2. The Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

(a)     *Predominance*

An action demonstrates "predominance" of common questions where "the group for which certification is sought seeks to remedy a common legal grievance." <u>Riordan</u>, 113 F.R.D. at 65. The test is *not* whether resolution of "common issues" would be dispositive of the entire litigation.  <u>Id</u>. To establish predominance, a plaintiff must be able to prove h[er] case with 'evidence that is common to the class rather than individual to its members'." <u>Gordon v</u>. <u>Caribbean Cruise Line, Inc.,</u> No. 14 C 5848, 2019 U.S. Dist. LEXIS 20604, 2019 WL 498937, at *9 (N.D. Ill. Feb. 8, 2019) (citation omitted). Further, as the court observed in <u>Johns v. DeLeonardis</u>, 145 F.R.D. 480,484-85 (N.D. Ill, 1992): Section (b)(3) "merely requires that the class claims have a dominant, central focus. Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?"

For reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3), there exists predominating common questions of fact and law, i.e. the class members' claims arose from the same course of conduct by the Defendant: a policy of not paying overtime and of improperly calculating overtime using a bi-monthly calendar. Here the "course of conduct" is a mirror image for Plaintiffs and the two proposed subclasses.  The "no overtime" subclass was simply not paid overtime wages and the "failure to pay in a 7-day week" subclass was not paid on a 7-day pay week method.

(b)     *Superiority*

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class.  <u>Scholes v. Stone, McGuire & Benjamin,</u> 143 F.R.D. 181 (N.D. Ill 1992). The alternative is

potentially dozens of individual lawsuits and piecemeal litigation involving the same policies and practices.

A class action is an appropriate method for the fair and efficient adjudication of the controversy between the class and Defendant. By proceeding on a class basis, the parties will be allowed to resolve the claims of 46-100 Class Members in one coordinated proceeding, thus conferring significant benefits upon each Class Member. Defendant will also benefit by being spared the expense and complexity of scores of individual lawsuits.

WHEREFORE, for the foregoing reasons and supporting materials, Plaintiffs request that the Court grant this motion and enter an Order:

A. Certifying Plaintiffs' IMWL as a class action, authorizing notice to the putative class, appointing Jodi Mair, Franco Demonte and Jacob Schmanke as class representatives, and appointing Plaintiffs' attorneys as class counsel;

B. Setting a schedule for Plaintiffs to file supplemental evidentiary materials, if necessary; and

C. granting such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ John C. Ireland
One of the Attorneys for Plaintiffs

John C. Ireland
The Law Office of John C. Ireland
636 Spruce Street
South Elgin, IL 60177
(630) 464-9675
attorneyireland@gmail.com
ARDC # 6283137

Lisa L. Clay
Attorney at Law
2100 Manchester Road, Suite 1612
Wheaton, IL 60187
(630) 456-4818
lisa@clayatlaw.com
ARDC # 6277257

15